# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

|  |  |  |
|---|---|---|
| BRADY CENTER TO PREVENT GUN VIOLENCE | ) ) ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| versus | ) | Civil Action No. 2:13-CV-00104 |
|  | ) |  |
| CITY OF NELSON, GEORGIA, | ) | **COMPLAINT FOR** |
|  | ) | **DECLARATORY RELIEF AND** |
| MR. JONATHAN BISHOP, in his official capacity as Mayor Pro Tempore of the City of Nelson, Georgia, | ) ) ) ) | **PERMANENT INJUNCTION** |
|  | ) |  |
| MR. DUANE CRONIC, | ) |  |
| MR. JACKIE JARRETT, | ) |  |
| MRS. EDITH PORTILLO, | ) |  |
| MRS. MARTHA TIPTON, in their official capacities as members of the City Council of Nelson, Georgia, | ) ) ) ) |  |
|  | ) |  |
| Defendants. | ) |  |

      1.     This complaint seeks declaratory and injunctive relief to vindicate the rights of the plaintiff, Brady Center to Prevent Gun Violence ("Brady Center" or "Plaintiff"), and its membership to be free from an illegal and unconstitutional requirement imposed by the City of Nelson ("Defendant," "City," or "Nelson") in the State of Georgia that all "Heads of Households," an undefined term, residing within the city limits maintain a firearm with ammunition therefor.

2.     On April 1, 2013, the City adopted and added Section 38-6 to Chapter 38, Article I of the Code of the City of Nelson, which requires every Head of Household within the City limits to maintain a firearm and ammunition therefor ("the Firearm Ordinance") (Attachment A hereto).

3.     Exempted from the Ordinance are those who (1) "suffer from a physical or mental disability,"  (2) are "paupers," (3) "conscientiously oppose maintaining firearms as a result of beliefs or religious doctrine," or (4) have been "convicted of a felony."

4.     Under a general penalty provision in the Code of the City of Nelson, violations of the Firearm Ordinance can be punished by, among other things, "a fine not to exceed $1,000.00." *See* Chapter 1, Section 1-11.

5.     The Firearm Ordinance adopted by the City violates the rights of Plaintiff's membership under the First, Second, and Fourteenth Amendments to the United States Constitution.

6.     Although the United States Supreme Court's recent decisions in District of Columbia v. Heller, 554 U.S. 570 (2008), and MacDonald v. Chicago, 651 U.S. 3025 (2010), guarantee law-abiding, responsible citizens the right to possess a firearm in the home for self-defense, the Second Amendment does not require – or permit the government to require – individuals to possess firearms. Rather, the Second Amendment recognizes that individuals can determine how

best to defend their homes and families, including by choosing not to bring a firearm into the home.  This lawsuit is brought to protect that fundamental liberty, and to prevent its unconstitutional infringement.

## Jurisdiction and Venue

7.     This action is brought under 42 U.S.C. § 1983.   The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States.  In addition, jurisdiction is proper under 28 U.S.C. § 1343(a)(3) because Defendants, under color of state law, seek to deprive Plaintiff's membership of federal constitutional rights.   This Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201-02.

8.     The Court has personal jurisdiction over Defendants because, upon information and belief, each Defendant resides in the State of Georgia.

9.     Venue in this district is proper under 28 U.S.C. § 1391(b)(1), because, upon information and belief, each Defendant is a resident of the State of Georgia and one or more Defendants reside in this district.

10.     Venue in this division is proper under Local Rule 3.1 because, upon information and belief, each Defendant resides in this division.

## The Parties

11.     Plaintiff Brady Center is a not-for-profit organization existing under the laws of the District of Columbia and having its principal place of business at

1225 Eye Street, N.W., Suite 1100, Washington, D.C. 20005.  The Brady Center is a public interest organization that seeks to reduce gun deaths and injuries through education, research, and legal advocacy.  The Brady Center has members across the country, including over 1,300 in Georgia, with over 400 in the Atlanta area, and 20 in the Nelson area.  Prior to a name change in June 2001, the Brady Center was known as the Center to Prevent Handgun Violence.

12.     Harold Lamar Kellett is a longstanding resident of the City and a member of the Brady Center.

13.     Mr. Kellett is a citizen of the State of Georgia.

14.     Mr. Kellett does not have a physical or mental disability which would prohibit him from using a firearm.  Mr. Kellett is not a pauper or a convicted felon.  Mr. Kellett does not conscientiously oppose maintaining firearms as a result of beliefs or religious doctrine.

15.     But for the Firearm Ordinance, Mr. Kellett has no need or desire to purchase a firearm or ammunition.

16.     Upon information and belief, other residents of the City of Nelson likewise do not wish or need to purchase a firearm or ammunition but (1) do not "suffer from a physical or mental disability," (2) are not "paupers," (3) do not "conscientiously oppose maintaining firearms as a result of beliefs or religious doctrine," and (4) have not been "convicted of a felony."  Rather, they have no

- 4 -

rational economic need to own firearms, or may be unlearned or inexperienced in the operation and safekeeping thereof, or both.

17.    As of the date the Firearm Ordinance was adopted, Mr. Kellett did not own an operational firearm.  Prior to the Firearm Ordinance, Mr. Kellett owned only a non-operational antique handgun that is more than seventy-five years old and without ammunition.

18.    Defendants are the City of Nelson, Georgia; Mr. Jonathan Bishop, in his official capacity as Mayor Pro Tempore of Nelson; and Mr. Duane Cronic, Ms. Jackie Jarrett, Ms. Edith Portillo, and Ms. Martha Tipton, in their official capacities as members of the City Council of Nelson, Georgia.

19.    Upon information and belief, Defendant Jarrett resides in Nelson, Georgia.

20.    Upon information and belief, Defendant Portillo resides in Ball Ground, Georgia.

21.    Upon information and belief, Defendant Tipton resides in Ball Ground, Georgia.

22.    Upon information and belief, Defendant Cronic resides in Ball Ground, Georgia.

23.    Upon information and belief, Defendant Bishop resides in Ball Ground, Georgia.

**The Firearm Ordinance**

24.     During a meeting of the Nelson City Council, held on March 5, 2013, Defendant Cronic introduced and read an ordinance that would require "Heads of Households" in Nelson to own and maintain a firearm.  The Ordinance was reread during a subsequent meeting of the Nelson City Council held on April 1, 2013. During the April 1, 2013, Nelson City Council Meeting, the Council voted to adopt the Firearm Ordinance.

25.     The Firearm Ordinance went into effect on April 11, 2013 (the "Effective Date"), ten days after the second reading and adoption vote.

26.     Subsection (a) of the Firearm Ordinance provides that "every head of household residing in the city limits is required to maintain a firearm, together with ammunition therefor."   Subsection (b) exempts from the Ordinance's mandate "those heads of households who suffer a physical or mental disability which would prohibit them from using such a firearm" and "those heads of households who are paupers or who conscientiously oppose maintaining firearms as a result of beliefs or religious doctrine, or persons convicted of a felony."

27.     Under Chapter 1, Section 1-11, a general penalty provision of the Code of the City of Nelson, violations of the Firearm Ordinance may be punished by a fine not to exceed $1,000.00.

28.     On May 6, 2013, the Nelson City Council voted to post a sign in the City to publicize the Firearm Ordinance.

29.     Individual Defendants – and the City of Nelson's police chief – have made numerous appearances on news and opinion programs and have made public statements to publicize the Firearm Ordinance's mandate.

### The Ordinance's Effect on Plaintiff's Membership

30.     Plaintiff and its membership have suffered an injury in fact.  The Firearm Ordinance harms the constitutionally protected individual rights the Plaintiff seeks to protect, which are germane to the Center's express purpose of reducing gun deaths and injuries.

31.     Mr. Kellett, a member of the Brady Center and a resident of Nelson, has suffered an injury in fact.  As of the Effective Date of the Firearm Ordinance, Mr. Kellett did not own an operable firearm.

32.     Because Mr. Kellett obeyed the law, the Firearm Ordinance forced Mr. Kellett against his will to purchase on April 23, 2013, a Remington model 1911, .45 caliber handgun for $646.59.  It also forced him to purchase against his will .45 caliber ammunition for $32.09.

33.     Prior to April 23, 2013, Mr. Kellett had not purchased an operational firearm.   In the late 1990s, Mr. Kellett purchased a non-operational, antique handgun that was approximately seventy-five years old. Mr. Kellett never operated

this antique handgun. No one in Mr. Kellett's household maintains an operational firearm other than the Remington handgun mandated by the City of Nelson and purchased on April 23, 2013.

34. But for the mandate of the Firearm Ordinance, Mr. Kellett would not have purchased the Remington handgun or ammunition.

35. The Firearm Ordinance inflicted a concrete economic harm on Mr. Kellett by forcing him to purchase a firearm and ammunition.

36. Moreover, at least one study has established a direct correlation between gun ownership in a locality and the number of gun deaths in that locality.[1] Upon information and belief, increased gun deaths in a locality may also have a negative effect on property values in that locality.

37. Mr. Kellett has suffered further economic harm because the Firearm Ordinance makes Nelson a less-desirable location, thereby causing property values, including the Kelletts', to decrease.

38. Aside from the economic harm, the City, through its Firearm Ordinance, has stripped Mr. Kellett of his right to determine how best to protect his home and compelled him to take action and communicate with the public in a manner he would not otherwise have done.

[1] *See* http://www.hsph.harvard.edu/hicrc/firearms-research/guns-and-death/, Last Accessed May 10, 2013.

## Count I – Violation of the Second Amendment

39.    Plaintiff incorporates and realleges each and every allegation contained in paragraphs 1-38 of this Complaint as though fully set forth herein.

40.    By passing the Firearm Ordinance, Defendants have forced  at least one of Plaintiff's members to purchase and maintain a firearm and ammunition or face penalties.

41.    The Second Amendment to the United States Constitution guarantees law-abiding, responsible citizens the right to possess firearms in their homes for the purpose of defending their homes and families.  *See* District of Columbia v. Heller, 554 U.S. 570 (2008).

42.    This right is enforceable against the town of Nelson by virtue of incorporation through the Due Process Clause of the Fourteenth Amendment.  *See* MacDonald v. Chicago, 651 U.S. 3025 (2010).

43.    The Second Amendment right does not authorize the government to force an individual to purchase a firearm for self-defense in the home.  On the contrary, the right to defend the home affords each person the liberty to determine how best to protect his or her home and family, including the freedom to determine that the most effective way to do so is **not** to maintain or permit an operable firearm in his or her home.  Indeed, a majority of Americans choose to exercise their Second Amendment rights in this fashion: protecting their families and

children from the violence of accidental firearm injuries, domestic violence, and suicide. The Firearm Ordinance, by stripping at least one of Plaintiff's members of this fundamental right to decide how best to protect the home, violates the Second Amendment.

44.     Plaintiff has no adequate remedy at law, and the continuing compulsion to own firearms works a continuing injury on its membership.

## Count II – Violation of the Right to Privacy

45.     Plaintiff incorporates and realleges each and every allegation contained in paragraphs 1-44 of this Complaint as though fully set forth herein.

46.     The United States Constitution guarantees individuals a fundamental right to a "zone of privacy" to make certain personal decisions free from government interference. Griswold v. Connecticut, 381 U.S. 479 (1965).

47.     This fundamental right to privacy protects especially the sanctity of the home. *See id.*

48.     The Constitution commits to each individual decisions about how best to defend oneself and one's children. Such decisions include how and whether to bring a firearm into one's home.

49.     Defendants, by promulgating the Firearm Ordinance, have violated the right to privacy of at least one of Plaintiff's members by using the powers of

government to force him to bring into his home an unwanted firearm and ammunition.

50.    Plaintiff has no adequate remedy at law, and the continuing compulsion to own firearms works a continuing injury on its membership.

## Count III – Violation of the First Amendment

51.    Plaintiff incorporates and realleges each and every allegation contained in paragraphs 1-50 of this Complaint as though fully set forth herein.

52.    The First Amendment to the United States Constitution states that "Congress shall make no law . . . abridging the freedom of speech."

53.    The freedom of speech applies against the State of Georgia and the City of Nelson by operation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *See* Gitlow v. New York, 268 U.S. 652 (1925).

54.    Defendants by promulgating the Firearm Ordinance have violated the right to free speech of at least one of Plaintiff's members by requiring that residents choose between purchasing a firearm or, in the alternative, professing that they (1) "suffer from a physical or mental disability,"  (2) are "paupers," (3) "conscientiously oppose maintaining firearms as a result of beliefs or religious doctrine," or (4) have been "convicted of a felony."  By doing so, the Firearm Ordinance forces individuals to impugn their own mental abilities, stigmatize

themselves as impoverished, or profess to having beliefs, including religious beliefs, different from other members of their community. The Firearm Ordinance thus violates the First Amendment.

55.    Freedom of speech includes freedom to act or not to act. *See Texas v. Johnson*, 491 U.S. 397 (1989). By forcing the Plaintiff's membership to purchase firearms, the Ordinance forces individuals to adopt the City's favored position on a contentious, debated issue (gun ownership), and to subsidize the firearms industry even though the membership may have no economic interest or desire to do so.

56.    Moreover, by forcing individuals who would not otherwise do so to purchase firearms, the Ordinance effectively forces them to subsidize one side in a debated political question to the direct detriment of the Plaintiff.

57.    Plaintiff has no adequate remedy at law, and the continuing compulsion to own firearms works a continuing injury on Plaintiff and its membership.

## Count IV - The Ordinance Violates the Equal Protection Clause of the Fourteenth Amendment

58.    Plaintiff incorporates and realleges each and every allegation contained in paragraphs 1-56 of this Complaint as though fully set forth herein.

59.    Defendants by promulgating the Firearm Ordinance have violated the right to equal protection of the law under the Fourteenth Amendment to the United States Constitution.

60.    The Firearm Ordinance creates two classes of individuals: Heads of Households and Non-Heads of Households.

61.    The Firearm Ordinance favors the first-class Heads of Households, who are required to purchase and maintain a firearm with ammunition.  Individuals in this favored class are relieved of this burden if they fall into one of the exemptions in the Firearm Ordinance.

62.    The Firearm Ordinance burdens the disfavored second-class Non-Heads of Households because the Firearm Ordinance does not consider whether these individuals "conscientiously oppose maintaining firearms as a result of beliefs or religious doctrine."  In cases where Heads of Households and Non-Heads of Households are married, joint household funds are diverted from the Non-Head of Household's use to comply with the Firearm Ordinance regardless of his or her individual beliefs.

63.    Part of the responsibility of maintaining a firearm in the home inevitably falls on Non-Heads of Households.  Yet these second-class individuals have no input into the decision whether guns are brought into their homes.   Nor does the Firearm Ordinance consider whether these second-class individuals "suffer from a physical or mental disability,"  are "paupers," or have been "convicted of a felony."

64.     The City has no rational basis for discriminating as between Heads of Households and Non-Heads of Households.

65.     Plaintiff has no adequate remedy at law, and the continuing compulsion to own firearms works a continuing injury on its membership.

### Prayer for Relief

WHEREFORE, Plaintiff prays that this Court:

A.     Enter a judgment declaring that the Ordinance is illegal and unconstitutional on its face because it violates the constitutional rights of Plaintiff and Plaintiff's membership as those rights are protected under the First, Second, and Fourteenth Amendments;

B.     Enter a judgment declaring that the Ordinance is null and void and unenforceable;

C.     Enter a permanent injunction, Plaintiff having no adequate remedy at law and suffering irreparable injury as a result of this unconstitutional Ordinance, enjoining Defendants and all Nelson, Georgia, officers and officials, from placing into effect, enforcing or taking any action under the Ordinance or otherwise allowing the Ordinances to become effective, and/or directing Defendants to suspend, withdraw, cancel, or annul the Ordinance;

D.     Award Plaintiff reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

E.      Grant Plaintiff such other and further relief, including costs, as the

Court may deem just and proper.

DATED this 16th day of May, 2013.

Respectfully submitted,

DOW LOHNES PLLC

s/ Peter C. Canfield
PETER C. CANFIELD
  Georgia Bar No. 107748
Six Concourse Parkway
Suite 1800
Atlanta, GA 30328-6117
Telephone: (770) 901-8800
Facsimile: (770) 901-8874
pcanfield@dowlohnes.com

RUKESH KORDE
JONATHAN R. WAKELY
DANIEL E. VALENCIA
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
P.O. Box 7566
Washington, DC  20044
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

JONATHAN E. LOWY
ELIZABETH BURKE
LEGAL ACTION PROJECT
BRADY CENTER TO PREVENT GUN VIOLENCE
1225 Eye St., NW
Suite 1100
Washington, DC  20005
Telephone: (434) 249-7303

ATTORNEYS FOR THE BRADY CENTER TO PREVENT GUN VIOLENCE